IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELODY J. ROSE,

    Plaintiff,        Case No. 09-CV-0142

v.

STEPHEN M. CAHEE, M.D.,
FOND DU LAC REGIONAL CLINIC, S.C.,
and AGNESIAN HEALTHCARE, INC.,

    Defendants.

**BRIEF IN SUPPORT OF MOTION TO BAR THE PLAINTIFF FROM NAMING ANY PSYCHOLOGIST EXPERTS IN REBUTTAL**

NOW COME the defendants, Stephen M. Cahee, M.D. (correctly known as Steven M. Cahee, M.D.) and Fond du Lac Regional Clinic, S.C., by their attorneys, Nash, Spindler, Grimstad & McCracken LLP, and hereby provide the following factual and legal support for their motion to bar the plaintiff from naming any psychological experts in rebuttal to prove their case-in-chief.

**BACKGROUND FACTS**

This lawsuit arises out of alleged discriminatory treatment of the plaintiff by Steven M. Cahee, M.D. In her Amended Complaint, the plaintiff alleged that she "experienced serious psychological and emotional distress", was denied "the full and equal enjoyment of the services, facilities, and/or advantages of a public place of accommodation", and that she was subjected to "indignity, including humiliating, degrading or abusive treatment" as a result of her disability. (Plaintiff's Amended Complaint, ¶¶¶¶ 25, 39, 46, 62). In fact, other than an allegation of discomfort during the three months between when she visited Dr. Cahee and when her gallbladder was

1

actually removed, Ms. Rose's Amended Complaint claims no injuries other than serious psychological and emotional distress.

Pursuant to the Amended Scheduling Order executed by this Court, all expert disclosures were to be made by both parties on or before December 1, 2009. The parties are then allowed an additional three months to disclose rebuttal experts on or before February 2, 2010. The plaintiff only named one expert: Dr. Jon Gould, a board certified general surgeon at the University of Wisconsin Hospital & Clinics, who actually performed the gallbladder surgery on Ms. Rose. No experts were named who could testify about the psychological injuries Ms. Rose alleged in her Amended Complaint.

These defendants named, among others, Dr. Timothy Lynch, a clinical psychologist, to testify about Ms. Rose's psychological condition and any alleged psychological injury arising out of the facts of this case. After both expert disclosures were submitted, the defendants received word that Ms. Rose intends to name a psychologist in rebuttal to bolster the allegations of injury she made in her Amended Complaint.

This Motion is thus brought to prevent the plaintiff from naming a rebuttal expert to testify in her case-in-chief. Established Seventh Circuit case law forbids plaintiffs in particular[1] from using the rebuttal expert disclosure date as a "backboard" in case their initial disclosure does not include all of the experts necessary to prove their case. The Court should find that Ms. Rose alleged psychological injury, that she did not name a psychologist qualified to testify about her injury, and that any psychologist named before the rebuttal deadline would not be a true "rebuttal" witness, as he or she would be testifying as part of the plaintiff's case-in-chief.

---

[1] As this Court is well aware, in many instances the plaintiffs are required to name experts before the defendants, and a date for rebuttal experts is then set after both disclosures have taken place. Thus, the case law considers primarily plaintiffs who names "rebuttal" experts to testify about their case-in-chief after the defense experts are already named.

# ARGUMENT

## I. Experts Must Be Disclosed Pursuant To The Scheduling Order

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), "[a] party must make [expert] disclosures at the times and in the sequence that the court orders." The sanction for a violation of this requirement is the automatic and mandatory striking of the expert. See *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th.Cir.1996).

> "The federal civil rules, as recently revamped, require disclosure to one's opponent of expert testimony intended for use as rebuttal evidence within 30 days of the opponent's disclosure of *his* expert testimony, unless the district court otherwise directs or the parties otherwise stipulate. Fed.R.Civ.P. 26(a)(2)(C).... New Rule 37(c)(1) provides that 'a party that without substantial justification fails to disclose information required by Rule 26(a) ... *shall* not, unless such failure is harmless, be permitted to use as evidence at a trial ... any ... information not so disclosed' (emphasis added). The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless."

Federal Rule of Civil Procedure 37(c)(1), referenced in *Finley*, provides as follows, in relevant part:

> "(1) Failure to Disclose or Supplement.
>
> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), <u>the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless</u>. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." (emphasis added).

Consequently, when a party fails to properly name an expert pursuant to the Court's Scheduling Order, the sanction of exclusion is automatic and mandatory.

3

## II. Rebuttal Experts

As the rebuttal expert deadline always follows the initial expert disclosure date, all parties would prefer to ignore the initial deadline and disclose all of their experts by the rebuttal date. However, courts have implored litigants not to resort to this tactic.

In *Braun v. Lorillard Inc.*, 84 F.3d 230 (7th.Cir.1996), a tort suit alleging that cigarettes contained asbestos, the plaintiff attempted to call a former employee of the cigarette company to testify about his knowledge of the use of asbestos. When this witness was not properly disclosed in the plaintiffs' initial disclosures, they tried to name him as a rebuttal witness. The district court refused to allow the witness to testify, because good cause was not shown for failing to name him as a witness in the plaintiffs' initial disclosures. On appeal, the Seventh Circuit affirmed, reasoning as follows:

> "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief. *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir.1995); *Gossett v. Weyerhaeuser Co.*, 856 F.2d 1154, 1156-57 (8th Cir.1988). Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his."

One of the cases cited by *Braun*, *Bronk v. Ineichen*, 54 F.3d 425 (7th.Cir.1995), affirmed the district court's finding that a so-called "rebuttal" expert could not testify for the plaintiffs due to their failure to name him on their pre-trial witness list:

> "Finally, the judge did not abuse her discretion in excluding Keith Bronk's testimony as a rebuttal witness after plaintiffs failed to name him on their pre-trial witness list pursuant to the district court's order. It should have been clear to plaintiffs from the outset that Keith Bronk's testimony regarding Pierre's training might be significant; their failure to name him at the appropriate time cannot be laid at anyone else's doorstep." (citations omitted).

4

### III. Plaintiff Put Her Mental Condition At Issue And Knew She Would Need An Expert Well Before Her Expert Disclose Deadline

The plaintiff put her mental condition at issue, and as early as October 9, 2009, nearly two months before the plaintiff's expert disclosure deadline, plaintiff's counsel was aware that the defense sought a psychological evaluation of Ms. Rose. A letter dated October 7, 2009, from Attorney Terri Weber to Attorney Scott Schoettes sets forth Dr. Cahee's intention to schedule an independent medical evaluation with Dr. Timothy Lynch. (Affidavit of Terri L. Weber, Exhibit A). After an email exchange on October 9. 2009 (attached to the Affidavit of Terri L. Weber as Exhibit B), Attorney Schoettes sent Attorney Weber a letter indicating that he understood the examination "would involve the doctor's interrogation of the Plaintiff, including 'an extensive history and testing which may include in part an MMPI and/or other psychological testing.')" (Weber Aff., Exhibit C).

Attorney Schoettes also revealed his intention to pursue Ms. Rose's psychological claim without expert testimony in his email to Attorney Weber dated October 9, 2009: "As I stated in my previous email, I do not think that such an examination is warranted by this case – a case in which Plaintiff is not claiming any ongoing physical pain, suffering or debilitation resulting from Defendants' conduct, nor any damages for dignitary harm, emotional distress and humiliation <u>beyond that which any person would suffer after experiencing the kind of discrimination at issue here</u>." (emphasis added). This dispute was eventually brought before the Court, and on November 9, 2009, an Order was entered compelling Ms. Rose to submit to a psychological evaluation because she put her mental condition in controversy by alleging serious psychological impacts.

5

Thus, as early as October 9, 2009, plaintiff's counsel was aware that the defendants intended to offer expert testimony on the issue of Ms. Rose's psychological condition and the harm that was caused thereto. Moreover, when the Court granted the November 9, 2009 Order compelling a psychological evaluation, the plaintiff must have understood that this evaluation would lead to expert psychological evidence that the defendants would offer at trial.

Attorney Schoettes's letter dated December 7, 2009, nearly a month after the Order was entered (and attached to the Affidavit of Terri L. Weber as Exhibit D), reveals that he simply wanted to obtain Dr. Lynch's testimony before retaining his own psychologist:

> "With respect to the disclosure of rebuttal expert(s) relating to the subjects of Dr. Lynch's report, I initially proposed that Plaintiff have sixty (60) days to disclose a rebuttal expert because that is the length of time between expert disclosures and rebuttal expert disclosures all of the parties had agreed to in the scheduling order entered by the Court.
>
> …
>
> Also, I note that Defendants provided a partial report from Dr. Lynch as part of their expert disclosures. I want to affirm my understanding that the new deadline for disclosure of a rebuttal expert(s) related to Dr. Lynch's report will apply to the entirety of Dr. Lynch's report, including the portions provided in the expert disclosures sent on December 1, 2009."

Every litigant would prefer to have as much detail on their adversary's case before "locking in" to a particular theory of the case and a set of experts to support that theory. This Court told the plaintiff in its November 9, 2009 Order that "Rose placed her mental condition in controversy by alleging 'serious' psychological impacts. Consequently, the defendants appropriately pursued a psychological examination to determine the extent and nature of any resulting mental or emotional injuries." This Order finds, as the law of the case, that the plaintiff's Amended Complaint put the severity of her mental condition at issue. Even further, the Order is indisputable <u>notice</u>

6

to plaintiff's counsel that Ms. Rose's mental condition is at issue in this litigation, and that expert testimony is properly received to speak to the extent of Ms. Rose's alleged emotional distress.

These facts put this case squarely within the holding of *Braun v. Lorillard Inc.*, 84 F.3d 230 (7th.Cir.1996). When the plaintiff is on notice that the defendant intends to contest an issue that is germane to the plaintiff's prima facie case, the plaintiff must name any expert witnesses on this issue <u>as part of his or her case in chief</u>. *Braun*, 84 F.3d at 237. *Braun*'s concern—that the plaintiff could reverse the order of proof by waiting until rebuttal to disclose experts that are properly part of their case in chief—should be this Court's concern as well. Given this Court's explicit statement that Ms. Rose put her own mental condition at issue nearly one month before the expert disclosure deadline, as well as the defendants' assertions to that effect long beforehand, there is no reason why the plaintiff could not or did not name an expert on this issue in her initial disclosure.

The plaintiff's failure to timely name a psychologist as part of her case in chief is also not harmless. In *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128 (E.D.Wis.2003), the plaintiff failed to name expert witnesses by the court-imposed August 23, 2003 deadline. The plaintiff also failed to comply with his lay witness disclosure deadline. On September 5, 2003, defendant Valmet-Appleton moved to exclude all of the plaintiff's witnesses on the basis of untimely disclosure. The plaintiff responded by claiming that Valmet-Appleton's motion "seek[s] to elevate form over substance," and that "[a]s long as a defendant isn't unfairly surprised by a trial ambush, a delay in disclosure *never* necessitates witness exclusion." 219 F.R.D. at 131, n.6 (italics in original).

This Court disagreed. The following lengthy excerpt from *Saudi* is reproduced in its entirety as the Court's analysis is particularly applicable to the facts of this case:

7

"While the Court finds that Saudi's explanations do not offer substantial justification for his failure to comply with disclosure obligations, the Court should still refrain from granting Valmet-Appleton's Motion to Exclude if Saudi's failure to disclose was 'harmless.' *See, Salgado,* 150 F.3d at 742. The Court finds no support for Saudi's claim that in order to grant the Rule 37(c) exclusion, the Court must find that the failure to disclose 'irreparably harms and prejudices the defendant.' Plaintiff's Opposition Brief, at 1. Indeed, Saudi offers no authority for such a standard. The appropriate standard set out by Rule 37(c)(1) and the Seventh Circuit and applied by this Court is whether Saudi's failure to disclose was 'harmless.'

The importance of lay and expert witness disclosures and the harms resulting from a failure to disclose need little elaboration. <u>When one party does not disclose, the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed, and for whom expert reports have not been provided</u>. In this case, it has been, and continues to be, impossible for Valmet-Appleton even to begin the detailed process of analyzing expert testimony and identifying appropriate responsive testimony. Absent timely disclosure, Valmet-Appleton cannot timely prepare its defense. The determination of whether a Rule 26(a) violation is in fact harmless 'is entrusted to the broad discretion of the district court,' *Mid-America Tablewares,* 100 F.3d at 1363, and in this case, the Court does not find Saudi's violation of Rule 26(a) and of a direct Court Order to be a 'harmless' one.

Of course, it is worth mentioning that one possible way to mitigate this harm is to have the Court simply move back dates and extend deadlines for months at a time as Saudi has requested the Court to do in his opposition to Valmet-Appleton's Motion to Exclude. However, at the heart of Rule 37's automatic sanction provision is the recognition that precious time and resources of both opposing counsel and this Court are wasted when faced with unjustified delay. And such waste, when significant enough, constitutes its own kind of harm.

If Valmet-Appleton's inability to conduct necessary discovery or prepare to respond to witnesses could be remedied by the Court simply shrugging its metaphorical shoulders and pushing back deadlines several months, the harsh remedy provided by Rule 37(c) might be avoided. But, <u>if the Court were to follow Saudi's logic, the Court could never impose a Rule 37(c) sanction</u>. As the Seventh Circuit has noted in upholding a Rule 37(c) exclusion, the Court, 'has a right, independent of the parties, to conduct trial preparation in a manner that husbands appropriately the scarce judicial resources of that busy district.' *Salgado,* 150 F.3d at 742; *See also Dotson v. Bravo,* 321 F.3d 663 (7th Cir.2003) ('[T]he court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations. ... This power is governed by the necessary control courts must have over their dockets.') (citations omitted)." *Saudi*, 219 F.R.D. at 133-34 (underlining added).

*Saudi* is on point.  Rule 37(c) states that a party who fails to properly identify expert witnesses "is not allowed to use that ... witness ... to supply evidence... unless the failure ... is harmless".  If disclosing witnesses late was always harmless due to the Court's ability to push back deadlines, this Rule would be meaningless.  Here, just as in *Saudi*, the defendants are harmed by being unable to prepare to defend against the testimony of one of the plaintiff's experts.  Further, should the plaintiff's "rebuttal" psychologist offer an opinion that the plaintiff suffers from a rare psychological dysfunction of some kind, for example, the defendants will be precluded from naming an expert on this issue in rebuttal.  <u>This is the sort of situation in which a rebuttal expert would be appropriately named</u>.  However, through their reversal of the order of proof, the plaintiff has usurped the time set by this Court for the parties to analyze the testimony of the opposition's experts, determine what new issues have been raised, and respond appropriately through the disclosure of rebuttal experts into her own opportunity to substantiate her case in chief.  *See, e.g., Finwall v. City of Chicago*, 239 F.R.D. 494 (N.D.Ill.2006) (finding that, even thought no particular rule forbade the plaintiff from waiting until the day before the close of discovery to disclose expert witness reports, "common sense would have dictated that the plaintiff's counsel's casual approach to their discovery obligations was inappropriate and essentially precluded the deposition of the experts-under Rule 26(b)(4)(A), within the discovery deadline since the defendants could not depose plaintiff's experts until they received their reports-and prohibited the defendants from engaging a rebuttal expert until after discovery had closed.")

Therefore, this Court should properly find that the plaintiff's failure to name a psychologist as part of her case in chief was not substantially justified—especially in light of this Court's Order dated November 9, 2009 in which the plaintiff was put on

9

notice that "Rose placed her mental condition in controversy by alleging 'serious' psychological impacts"—and that this failure was not harmless pursuant to this Court's decision in *Saudi*. Pursuant to Federal Rule of Civil Procedure 37, the defendants Motion To Bar The Plaintiff From Naming Any Psychologist Experts In Rebuttal should be granted.

## CONCLUSION

Attorney Schoettes opined in his October 9, 2009 email that he did not believe his client was claiming any damages that warranted expert testimony. While the plaintiff is free to prosecute her case as she sees fit, a change of heart about whether or not she needs an expert to support her claim for severe psychological and emotional distress does not permit this expert to be disclosed in rebuttal. The defendants did not present an unforeseen defense by naming Dr. Lynch as an expert on December 1, 2009, and pursuant to *Braun* and *Bronk*, an expert testifying about an allegation pled in the complaint is not a "true" rebuttal expert as a matter of law. If this were the case, plaintiffs would never disclose experts as part of their case in chief. Therefore, this Court should grant the defendants' motion to bar the plaintiff from naming a psychologist in rebuttal.

Dated this 2nd day of February, 2010.

                    NASH, SPINDLER, GRIMSTAD & McCRACKEN, LLP

                    *s/Terri L. Weber*

By:   William R. Wick
       State Bar No. 1015482
       Terri L. Weber
       State Bar No. 1027628
       Attorneys for Defendants, Stephen M. Cahee,
       M.D. and Fond du Lac Regional Clinic, S.C.

**MAILING ADDRESS**:
201 East Waldo Boulevard
Manitowoc, WI 54220
Phone: 920-684-3321
Fax: 920-684-0544
E-Mail:   BWick@nashlaw.com
             TWeber@Nashlaw.com