# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MELODY J. ROSE,

Plaintiff,                                        Case No. 09-CV-142

v.
                                                  Jury Trial Demanded
STEVEN M. CAHEE, M.D., FOND DU
LAC REGIONAL CLINIC, S.C., and
AGNESIAN HEALTHCARE, INC.

Defendants.

## PLAINTIFF'S RESPONSES TO
## DEFENDANT AGNESIAN HEALTHCARE, INC.'S
## PROPOSED FINDINGS OF FACT

Plaintiff, by her attorneys, submits the following response to Defendant Agnesian

Healthcare, Inc.'s Proposed Findings of Fact ("Defendant's Proposed Findings of Fact"), pursuant

to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rule 56.2:

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over the claims arising under Title III of the
   Americans with Disabilities Act and Section 504 of the Rehabilitation Act pursuant to 28
   U.S.C. §§ 1331, 1343.

   (A)   Amended Complaint of Melody J. Rose ¶ 3. (Docket #22).

   **RESPONSE**:  **Undisputed**, but Plaintiff notes that this states a legal conclusion and

therefore is not properly included within Findings of Fact.


2. The court may exercise supplemental jurisdiction over the state law claims brought under §§
   106.52, 252.14, Wis. Stat., pursuant to 28 U.S.C. § 1367.

   (A)   Amended Complaint of Melody J. Rose ¶ 3. (Docket #22).

   **RESPONSE**:  **Undisputed**, but Plaintiff notes that this states a legal conclusion and

therefore is not properly included within Findings of Fact.

3. The Eastern District of Wisconsin is the proper venue for this action pursuant to 28 U.S.C. § 1391(b).

   (A) Amended Complaint of Melody J. Rose ¶ 5. (Docket #22).
   (B) Answer of Agnesian Healthcare, Inc. to Amended Complaint ¶ 5. (Docket #12, Docket #30).

   **RESPONSE**: **Undisputed**, but Plaintiff notes that this states a legal conclusion and therefore is not properly included within Findings of Fact.

4. Melody Rose was a prisoner at the Taycheedah Correctional Institution ("TCI") at all times relevant to this lawsuit.

   (A) Amended Complaint of Melody J. Rose ¶ 6. (Docket #22).
   (B) Deposition of Melody J. Rose 64:2-65:4.

   **RESPONSE**: **Disputed**. The accuracy of this proposed finding of fact is contingent upon the meaning of the phrase "at all times relevant to this lawsuit." As Defendants' Proposed Finding of Fact No. 57 acknowledges, Plaintiff no longer resides at the Taycheedah Correctional Institution. (*See* Rose Dep. 7:23–8:6, Declaration of Melody J. Rose in Opposition to Motion for Summary Judgment on Behalf of Defendants Steven M. Cahee and Fond du Lac Regional Clinic, S.C. ("Rose Decl.") ¶ 9 (Docket No. 56).) [1]

---

[1] True and correct copies of any evidence cited by Plaintiff in this document that is not also cited in Defendant's Proposed Findings of Fact is attached to the Declarations of Scott A. Schoettes and Nina M. Knierim (filed herewith). Attached to the Declaration of Scott A. Schoettes are deposition transcript pages and deposition exhibits from the following: Deposition of Franklin M. Graziano, M.D. (Exhibit 1); Deposition of Melody J. Rose (Exhibit 2); Deposition of Steven G. Meress, M.D. (Exhibit 3); Deposition of Steven M. Cahee, M.D. (Exhibit 4); Deposition of Jon C. Gould, M.D. (Exhibit 5). Attached to the Declaration of Scott A. Schoettes are excerpts from the following: Answers to Plaintiff Melody J. Rose's Second Set of Interrogatories Directed to Defendant Steven M. Cahee Pursuant to Rule 33 (Interrogatory Nos.5 and 6) (Exhibit 6); Response to Plaintiff Melody J. Rose's Third Request to Defendant Dr. Steven M. Cahee for Production of Documents Pursuant to Rule 34 (Requests Nos. 47 and 48) (Exhibit 7); Plaintiff Melody J. Rose's Responses to Defendant Dr. Steven M. Cahee's Written Interrogatories (Responses No. 5 and 6) (Exhibit 8). Attached to the Declaration of Nina M. Knierim are deposition transcript pages and deposition exhibits from the following: Deposition of Robert Fale (Exhibit A); Deposition of Sister Mary Noel Brown (Exhibit B); Deposition of Norma Tirado Kellenberger (Exhibit C); and Deposition of Glen Treml (Exhibit D). Attached to the Declaration of Nina M. Knierim is a copy of the following: Agnesian Healthcare of Fond du Lac, Wisconsin, Inc. Corporate Bylaws ("Bylaws") (AH 1581-1604) (Exhibit E). Attached to the Declaration of Nina M. Knierim are excerpts from the following: Agnesian Healthcare, Inc.'s Responses to Plaintiff's Third Set of Interrogatories (Nos. 18 and 19) (Exhibit F); Defendant Agnesian's Responses to Plaintiff's Third Set of Requests for the Production of Documents (Nos. 60-62, 146-47) (Exhibit G).

5. Agnesian Healthcare, Inc. ("Agnesian") owns a brick-and-mortar structure known as the Fond du Lac Regional Clinic ("Clinic"), which is located at 420 East Division Street, Fond du Lac, Wisconsin 54935.

   (A)    Response of Agnesian Healthcare, Inc. to Plaintiff's First Set of Requests for Admission Nos. 2-3, 8.
   (B)    Deposition of Dennis C. Yunk 15:1-6, 24-25, 16:1-8, 17-22, 20:8-9.
   (C)    Affidavit of Glen Treml ¶ 2.

   **RESPONSE**: **Undisputed**.

6. Agnesian owns the real property upon which the Clinic is located: the parcel known as 420 East Division Street, Fond du Lac, Wisconsin 54935.

   (A)    Affidavit of Glen Treml ¶ 3.

   **RESPONSE**: **Undisputed**.

7. The Fond du Lac Regional Clinic, S.C. ("S.C."), is a service corporation owned by its member physicians, which provides certain medical services to patients at the Clinic.

   (A)    Response of Agnesian Healthcare, Inc. to Plaintiff's First Set of Requests for Admission Nos. 4-6, 9-10.
   (B)    Response of Fond du Lac Regional Clinic, S.C. to Plaintiff's First Set of Requests for Admission Nos. 2-5, 9-10.
   (C)    Response of Steven M. Cahee, M.D. to Plaintiff's First Set of Requests for Admission Nos. 2-5, 9-10.
   (D)    Deposition of Dennis C. Yunk 20:10-16.

   **RESPONSE**: **Undisputed**.

8. Steven M. Cahee, M.D. is a general surgeon licensed to practice medicine in the State of Wisconsin.

   (A)    Answer of Steven M. Cahee, M.D. and Fond du Lac Regional Clinic, S.C. to Amended Complaint ¶ 7. (Docket #8, Docket #30).
   (B)    Deposition of Steven M. Cahee, M.D. 20:19-20, 25:20-24.

   **RESPONSE**: **Undisputed**, but statement is incomplete and therefore potentially

misleading, as it omits the fact that Dr. Cahee also provides surgical services at St. Agnes Hospital.

(*See* Cahee Dep. at 27:16-20, 28:8–29:7; Treml Dep. at 143:2-5.)

9. Dr. Cahee has been employed by the S.C. at all times relevant to this lawsuit.

(A)     Answer of Steven M. Cahee, M.D. and Fond du Lac Regional Clinic, S.C. to
        Amended Complaint ¶ 19. (Docket #8, Docket #30).
(B)     Deposition of Steven M. Cahee, M.D. 20:11, 23-25, 21:1.

**RESPONSE**:  **Undisputed**, but statement is incomplete and therefore potentially

misleading.  Dr. Cahee is also a Shareholder Physician of the SC.  (Cahee Dep. at 70:11-13.)


10. Dr. Cahee does not have specialized training in infectious diseases.

(A)     Deposition of Steven M. Cahee, M.D. 68:7-16.

**RESPONSE**:  **Undisputed**.

### OPERATION AND CONTROL OF AGNESIAN

11. Agnesian's official mission statement is: "to provide compassionate care that brings hope[,]
    health & wholeness to those we serve by honoring the sacredness and dignity of all persons
    at every stage of life. We are rooted in the healing ministry of the Catholic church as we
    continue the mission of our sponsor, the Congregation of Sisters of St. Agnes."

(A)     Affidavit of Glen Treml ¶ 4.

**RESPONSE**:  **Undisputed.**


12. Agnesian operates in accordance with the "Ethical and Religious Directives for Catholic
    Health Care Services," Fourth Edition.

(A)     Agnesian Corporate Bylaws 1.2. (Attached to the Affidavit of Glen Treml ¶ 10).
(B)     Affidavit of Glen Treml ¶ 5.

**RESPONSE**:  **Undisputed**, but statement is incomplete and therefore potentially

misleading.  Agnesian also operates in accordance with, *inter alia*, its Corporate Bylaws and other

policies.  Those policies include, among others, the following: equal opportunity policy (which

forbids, *inter alia*, exclusion from employment, denial of employment benefits, exclusion from

participation in its programs, and denial of access to its services on the basis of religion; policy on

"respecting religious beliefs and traditions of patient/family" (which, *inter alia*, forbids proselytizing,

prohibits all staff from imposing personal religious beliefs or practices on patients and requires that

the religious beliefs and traditions of all patients and family must be respected); policy on "chapel

and religious services" (which provides that the chapel at St. Agnes Hospital is available on "an

ecumenical basis," for the "religious needs for all patients"). (*See* Tirado-Kellenberger Dep. at 42:24–43:2, 58:10–59:5, Ex. 57; Fale Dep. at 90:18–91:20, Ex. 70 & 71.)

13. Agnesian is sponsored by the Congregation of the Sisters of Saint Agnes of Fond du Lac, Wisconsin, a Roman Catholic religious institute.

   (A)     Agnesian Corporate Bylaws 1.2. (Attached to the Affidavit of Glen Treml ¶ 10).

   **RESPONSE**: **Undisputed.** (For more detailed information about the relationship between Agnesian and the Congregation of the Sisters of Saint Agnes see APOF Nos. 45-102, as well as the Statement of Facts in Plaintiff's Brief in Opposition to Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

14. Agnesian's corporate membership is comprised of two classes: Class A Members and Class B Members.

   (A)     Agnesian Corporate Bylaws 2.1. (Attached to the Affidavit of Glen Treml ¶ 10).

   **RESPONSE**: **Undisputed**.

15. Agnesian's Class A Members must be members of the Congregation of the Sisters of St. Agnes of Fond du Lac, Wisconsin.

   (A)     Agnesian Corporate Bylaws 2.1. (Attached to the Affidavit of Glen Treml ¶ 10).

   **RESPONSE**: **Undisputed**.

16. Agnesian's Class A Members have the sole authority to appoint Class B Members.

   (A)     Agnesian Corporate Bylaws 2.2(f). (Attached to the Affidavit of Glen Treml ¶ 10).

   **RESPONSE**: **Undisputed**, but see APOF No. 53 and 71-73 for additional context.

17. Agnesian's Class A Members cannot delegate the following powers:
   (i)     "To adopt or change the mission, philosophy and values of Agnesian."
   (ii)    "To amend or repeal the Articles of Incorporation and Bylaws which affect the reserved powers of Agnesian's corporate members."
   (iii)   "To appoint the Class B Members of the Corporation [i.e., Agnesian] and to remove such Class B Members with or without cause."

(iv)    "To appoint and remove the Executive Leader of Sponsorship and the Presiding Member of the Class B Members."

(v)     "To approve the dissolution and/or liquidation of this Corporation [i.e., Agnesian], or any corporation of which this Corporation [i.e., Agnesian] is the controlling shareholder or member or the consolidation or merger of this Corporation [i.e., Agnesian] with another corporation or entity or the closure of any institution of major ministry or work conducted by the Corporation [i.e., Agnesian]."

(A)     Agnesian Corporate Bylaws 2.2(a), (c), (f), (g), (n). (Attached to the Affidavit of Glen Treml ¶ 10).

**RESPONSE**: **Undisputed,** but see APOF Nos. 52-83 for more information regarding the actual exercise of powers and authority over day-to-day operations of Agnesian.


18. Agnesian's Board of Directors must act "with due regard for the powers reserved to the Members of the Corporation."

(A)     Agnesian Corporate Bylaws 3.4. (Attached to the Affidavit of Glen Treml ¶ 10).

**RESPONSE**: **Undisputed,** but see APOF Nos. 54-83 for more information regarding the powers of the Board of Directors, the delegation of powers from Class A Members to Class B Members, and the lack of evidence that Members of the Corporation have exercised reserved powers.


19. Agnesian was listed in The Official Catholic Directory of 2008. The listing for "Agnesian Health Care, Inc. dba St. Agnes Hospital[,]" encompasses the operations of the Clinic.

(A)     Affidavit of Glen Treml ¶ 6.

**RESPONSE**: **Undisputed**.


20. Agnesian was listed in The Official Catholic Directory of 2009. The listing for "Agnesian Health Care, Inc. dba St. Agnes Hospital[,]" encompasses the operations of the Clinic.

(A)     Affidavit of Glen Treml ¶ 7.

**RESPONSE**: **Undisputed**.


21. In 2008, Agnesian was a tax-exempt entity under section 501(c)(3) of the 1986 Tax Code.

(A)     Affidavit of Glen Treml ¶ 8.

**RESPONSE: Undisputed.**

22. In 2009, Agnesian is a tax-exempt entity under section 501(c)(3) of the 1986 Tax Code.

    (A)       Affidavit of Glen Treml ¶ 9.

**RESPONSE: Undisputed.**

### THE BASIS OF THIS ACTION

23. Steven G. Meress, M.D. is a doctor who provides services to prisoners incarcerated at TCI.

    (A)       Deposition of Steven G. Meress, M.D. 8:13-9:11, 11:8-10, 14:25-15:1.

**RESPONSE: Undisputed.**

24. For some services, Dr. Meress refers prisoners incarcerated at TCI to the Clinic by filing an off-site service request.

    (A)       Deposition of Steven G. Meress, M.D. 26:13-27:21.

**RESPONSE: Undisputed.**

25. Dr. Meress referred Ms. Rose to the Clinic through an off-site service request in which he stated: "Referral to general surgery for gallstone. Question removal before starting HIV meds. US of 8-14-07 show multiple gallstones, Mild distention of bile duct at 7 mm, and no gallbladder wall thickening or fluid." He did not complete the sections titled "referral instructions" or "questions/outcomes to be addressed by this evaluation."

    (A)       Deposition of Steven M. Cahee, M.D. 169:15-25, Exhibit 17 (Bates MJR 36).
    (B)       Deposition of Steven G. Meress, M.D. 92:18-93:22, Exhibit 1002 (Bates MJR 101, 178).

**RESPONSE: Undisputed.**

26. Dr. Meress referred Ms. Rose to the Clinic based on a recommendation from Franklin M. Graziano, M.D. Dr. Graziano made that recommendation on February 27, 2008.

    (A)       Deposition of Franklin M. Graziano, M.D. 53:8-55:25, Exhibit 1012 (Bates MJR 37).
    (B)       Deposition of Steven G. Meress, M.D. 80:15-22.

**RESPONSE: Undisputed.**

27. Pursuant to Dr. Meress' off-site service request, Ms. Rose presented to Dr. Cahee at the Clinic on March 7, 2008 and at no other time.

    (A)    Answer of Agnesian Healthcare, Inc. to Amended Complaint ¶ 18. (Docket #12, Docket #30).

    (B)    Answer of Steven M. Cahee, M.D. and Fond du Lac Regional Clinic, S.C. to Amended Complaint ¶ 18. (Docket #8, Docket #30).

    (C)    Deposition of Steven M. Cahee, M.D. 123:24-124:2, 184:2-3.

    (D)    Deposition of Melody J. Rose 61:18-20.

**RESPONSE**: **Undisputed**.

28. On March 7, 2008, the only information that Dr. Cahee had from TCI about Ms. Rose' medical history was that which was contained in the off-site service request from TCI.

    (A)    Deposition of Steven M. Cahee, M.D. 124:8-125:7.

**RESPONSE**: **Disputed**. Dr. Cahee admits that TCI had provided a September 2007 "clinic note" from ARCW as part of the information sent with Ms. Rose on March 7, 2008. (Cahee Dep. at 131:25–132:18, 136:10-14, 179:22–182:13, 183:11-18.) (The September 2007 ARCW clinic note documents the fact that Ms. Rose had been experiencing right upper quadrant pain since some time before her August 2007 visit and that she had an ultrasound of her gallbladder (which showed that it contained gallstones) performed at that time. (*See* ARCW – Milwaukee, Provider SOAP Visit Notes, dated Sept. 25, 2007 (hereinafter "ARCW Visit Notes") (Cahee Dep., Ex. 20).) In addition, later on March 7 (after Dr. Cahee met with Ms. Rose), Taycheedah faxed to FdLRC both a list of Ms. Rose's current medications and the actual report from the ultrasound performed on August 17, 2007. (Cahee Dep. at 171:14–175:7, 178:13–179:10; Meress Dep. at 94:22–95:17.) At his deposition, Dr. Cahee admitted that he "may have" seen these documents as well. (Cahee Dep. at 177:17–179:18.) Though it is unclear whether Dr. Cahee was in fact seeking this information, or precisely when he may have seen the documents after they were faxed to FdLRC, these documents were certainly available to Dr. Cahee at FdLRC on March 7, 2008. (*See id.*) A more complete and accurate description of the evidence supporting Plaintiff's position regarding this topic is set forth in

Plaintiff's APOF Nos. 12– 14, as well as in footnote 5 of Plaintiff's Brief in Opposition to

Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

29. Dr. Cahee understood the off-site service request from TCI to mean: "I guess I'm being asked two questions: Number 1. Does the gallbladder need to be removed? And Number 2. Do we need to remove the gallbladder before we start her on HIV medicines?"

(A)     Deposition of Steven M. Cahee, M.D. 189:20-25.

**RESPONSE**: **Disputed**.  The weight, if any, to be given Dr. Cahee's self-serving statement

regarding what he "understood" the off-site service request to mean will have to be determined by

the fact-finder in light of the other direct and circumstantial evidence regarding his thought process

and actions on and after March 7, 2008.  The following evidence supports the conclusion that Dr.

Cahee was not at all focused on answering the two questions he claims were posed by the off-site

service request, but rather was fixated on his own safety and unsubstantiated fears regarding the

transmission of HIV: Rose Dep. at 67:21-24, 68:2-7, 68:10-19, 70:6-9, 71:12-18; Rose Decl. ¶ 2

(Docket No. 56); Cahee Dep. at 109:8–110:25, 131:25–132:18, 134:21-22, 136:10-14, 140:21–141:16,

145:3-19, 165:21–166:3, 170:25–171:4, 171:8-10, 171:14–175:7, 177:17–179:18, 179:22–182:13,

183:11-18, 199:19-25, 200:2-19, 218:11–219:8, Off-Site Service Request (Cahee Dep., Ex. 17),

General Surgery Office/Clinic Note – Final Report, electronically signed by Steven M. Cahee, MD,

on May 7, 2008 (hereinafter, "Final Report") (Cahee Dep. Ex. 21).; Meress Dep. at 91:2-4, 92:20–

93:9, 94:22–95:17, 98:21–99:16, 102:11-20, 104:3-8, 104:10-21, 116:17–118:8, 129:10-14, 161:13–

162:15, Ex. 1001, TCI Progress Note, dated Mar. 20, 2007 (hereinafter, "TCI Progress Note")

(Meress Dep., Ex. 1002, MJR 266).  A more complete and accurate description of the evidence

supporting Plaintiff's position regarding this topic is set forth in Plaintiff's APOF Nos. 15, 16, 17,

20, 26, 27, 29, 30, 33, 34, as well as footnotes 5–7 to Plaintiff's Brief in Opposition to Defendant

Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

30. Ms. Rose was not taking antiviral medications for her HIV infection when she presented to Dr. Cahee on March 7, 2008.

(A) Deposition of Franklin M. Graziano, M.D. 29:2-14, 41:19-22, 49:19-50:16, 51:11-22, 55:2-15.

**RESPONSE**: **Undisputed** (to be accurate, however, Plaintiff notes that the medications Dr. Graziano was considering placing her on – but wanted to hold off on until her gallbladder was removed – are antiretrovirals, not antivirals). (*See, e.g.,* Graziano Dep. at 51:3-22.)

31. After consulting with Ms. Rose on March 7, 2008, Dr. Cahee did not believe that he had sufficient information to make a recommendation regarding whether or not her gallbladder needed to be removed.

(A) Deposition of Steven M. Cahee, M.D. 133:8-138:25, 139:13-20, 190:14-24; 218:20-23.

**RESPONSE**: **Disputed**. The weight, if any, to be given Dr. Cahee's self-serving statement regarding the sufficiency of the information at his disposal to make a recommendation regarding removal of the gallbladder will have to be determined by the fact-finder in light of the other direct and circumstantial evidence regarding Dr. Cahee's thought process and actions on and after March 7, 2008. The evidence supports the conclusions that Dr. Cahee *did* have sufficient information to make a recommendation regarding whether Ms. Rose's gallbladder needed to be removed, that he did not engage in a genuine effort to obtain further information, and that Dr. Cahee's purported attempts to obtain additional information were nothing more than a subterfuge to delay and/or otherwise avoid performing gallbladder surgery on Ms. Rose. (*See* Gould Dep. at 24:24–26:12; 29:15–31:18, 55:23–57:11, 60:9-24; Cahee Dep. at 109:8–110:25, 139:1-8; 141:2-16, 145:3-19, 165:21–166:3, 171:8–175:7, 177:17–179:18, 199:19-25, 200:2-19, 218:11–219:8; Off-Site Service Request (Cahee Dep., Ex. 17); Final Report (Cahee Dep., Ex. 21), Meress Dep. at 94:22–95:17, 104:3-8.) A more complete and accurate description of the evidence supporting Plaintiff's position regarding this topic is set forth in Plaintiff's APOF Nos. 15–22, 25–27, 29–30, 33–34, & 36–39, as well as in footnotes 5–7 of Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

32. Dr. Cahee wanted additional information about Ms. Rose's medical history before he made a final recommendation regarding whether or not her gallbladder needed to be removed.

(A)     Deposition of Steven M. Cahee, M.D. 133:8-138:25, 139:13-20, 190:14-24, 218:20-23.

**RESPONSE**: **Disputed**. The weight, if any, to be given Dr. Cahee's self-serving statement regarding the sufficiency of the information at his disposal to make a final recommendation regarding removal of the gallbladder will have to be determined by the fact-finder in light of the other direct and circumstantial evidence regarding Dr. Cahee's thought process and actions on and after March 7, 2008. The evidence supports the conclusions that Dr. Cahee did have sufficient information to make a recommendation regarding whether or not Ms. Rose's gallbladder needed to be removed, that he did not engage in a genuine effort to obtain further information, and that Dr. Cahee's purported attempts to obtain additional information were nothing more than a subterfuge to delay and/or otherwise avoid performing gallbladder surgery on Ms. Rose. (*See* Gould Dep. at 24:24–26:12; 29:15–31:18, 55:23–57:11, 60:9-24; Cahee Dep. at 109:8–110:25, 139:1-8; 141:2-16, 145:3-19, 165:21–166:3, 171:8–175:7, 177:17–179:18, 199:19-25, 200:2-19, 218:11–219:8; Off-Site Service Request (Cahee Dep., Ex. 17); Final Report (Cahee Dep., Ex. 21), Meress Dep. at 94:22–95:17, 104:3-8.) A more complete and accurate description of the evidence supporting Plaintiff's position regarding this topic is set forth in Plaintiff's APOF Nos. 15– 22, 25–27, 29–30, 33–34, & 36–39, as well as in footnotes 5–7 of Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

33. Dr. Cahee wanted more information about Ms. Rose's medical history to ensure that he could obtain informed consent if he was to perform surgery on her.

(A)     Deposition of Steven M. Cahee, M.D. 138:21-25, 190:14-24, 192:22-193:3.

**RESPONSE**: **Disputed**. The weight, if any, to be given Dr. Cahee's self-serving statement regarding the sufficiency of the information at his disposal to make a recommendation regarding removal of the gallbladder will have to be determined by the fact-finder in light of the other direct

and circumstantial evidence regarding Dr. Cahee's thought process and actions on and after March 7, 2008. The evidence supports the conclusions that Dr. Cahee did have sufficient information to make a recommendation regarding whether Ms. Rose's gallbladder needed to be removed, that he did not engage in a genuine effort to obtain further information, and that Dr. Cahee's purported attempts to obtain additional information were nothing more than a subterfuge to delay and/or otherwise avoid performing gallbladder surgery on Ms. Rose. (*See* Gould Dep. at 24:24–26:12; 29:15–31:18, 55:23–57:11, 60:9-24; Cahee Dep. at 109:8–110:25, 139:1-8; 141:2-16, 145:3-19, 165:21–166:3, 171:8–175:7, 177:17–179:18, 199:19-25, 200:2-19, 218:11–219:8; Off-Site Service Request (Cahee Dep., Ex. 17); Final Report (Cahee Dep., Ex. 21), Meress Dep. at 94:22–95:17, 104:3-8.) A more complete and accurate description of the evidence supporting Plaintiff's position regarding this topic is set forth in Plaintiff's APOF Nos. 15– 22, 25–27, 29–30, 33–34, & 36–39, as well as in footnotes 5–7 of Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

Furthermore, Plaintiff asserts that Dr. Cahee's ability to obtain informed consent on March 7, 2008, is not a material fact to this lawsuit because Defendant Cahee's discriminatory refusal to treat Ms. Rose preempted any need to obtain informed consent for surgery from her. In addition, it would not have been necessary to obtain informed consent for surgery from Ms. Rose on March 7, 2008, because Ms. Rose did not expect – nor has she alleged – that her gallbladder surgery needed to be performed on that very day. Finally, for the reasons discussed above, Plaintiff disputes that Dr. Cahee lacked the information he would have needed to make a recommendation to Ms. Rose and obtain informed consent.

34. Dr. Cahee wanted more information about Ms. Rose's medical history to better understand the reasons behind her infectious disease doctor's thought that her gallbladder may need to be removed.

(A)     Deposition of Steven M. Cahee, M.D. 137:10-19, 138:7-25.

**RESPONSE**:  **Disputed**.  The weight, if any, to be given Dr. Cahee's self-serving statement regarding the sufficiency of the information at his disposal to make a recommendation regarding removal of the gallbladder will have to be determined by the fact-finder in light of the other direct and circumstantial evidence regarding Dr. Cahee's thought process and actions on and after March 7, 2008.  The evidence supports the conclusions that Dr. Cahee did have sufficient information to make a recommendation regarding whether or not Ms. Rose's gallbladder needed to be removed, that he did not engage in a genuine effort to obtain further information, and that Dr. Cahee's purported attempts to obtain additional information were nothing more than a subterfuge to delay and/or otherwise avoid performing gallbladder surgery on Ms. Rose.  *See* Gould Dep. at 24:24–26:12; 29:15–31:18, 55:23–57:11, 60:9-24; Cahee Dep. at 109:8–110:25, 139:1-8; 141:2-16, 145:3-19, 165:21–166:3, 171:8–175:7, 177:17–179:18, 199:19-25, 200:2-19, 218:11–219:8; Off-Site Service Request (Cahee Dep., Ex. 17); Final Report (Cahee Dep., Ex. 21), Meress Dep. at 94:22–95:17, 104:3-8.)  A more complete and accurate description of the evidence supporting Plaintiff's position regarding this topic is set forth in Plaintiff's APOF Nos. 15– 22, 25–27, 29–30, 33–34, & 36–39, as well as in footnotes 5–7 of Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

35. Dr. Cahee never made a final recommendation regarding whether or not Ms. Rose's gallbladder should be removed.

(A)     Deposition of Steven M. Cahee, M.D. 218:20-23.

**RESPONSE**:  **Disputed**.  The weight, if any, to be given Dr. Cahee's self-serving statement that he never made a final recommendation regarding removal of Ms. Rose's gallbladder will have to be determined by the fact-finder in light of the other direct and circumstantial evidence regarding Dr. Cahee's thought process and actions on and after March 7, 2008.  The evidence supports the conclusions that Dr. Cahee was able to and did make a recommendation regarding whether or not Ms. Rose's gallbladder needed to be removed.  (*See* Gould Dep. at 24:24–26:12; 29:15–31:18, 55:23–

57:11, 60:9-24; Cahee Dep. at 109:8–110:25, 139:1-8; 141:2-16, 145:3-19, 165:21–166:3, 171:8–175:7, 177:17–179:18, 199:19-25, 200:2-19, 218:11–219:8; Off-Site Service Request (Cahee Dep., Ex. 17); Final Report (Cahee Dep., Ex. 21), Meress Dep. at 94:22–95:17, 104:3-8.)  A more complete and accurate description of the evidence supporting Plaintiff's position regarding this topic is set forth in Plaintiff's APOF Nos. 15– 22, 25–27, 29–30, 33–34, & 36–39, as well as in footnotes 5–7 of Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

36. It is reasonable for a physician who is asked to consult for gallbladder surgery, who has no understanding of why antiviral medications have not been ordered for an AIDS patient, to request clarification as to why surgery should occur before medications are started.

(A)     Deposition of Franklin M. Graziano, M.D. 137:1-138:6.

**RESPONSE**: **Disputed**.  First, this is not properly a "proposed finding of fact," as the term "reasonable" either is asserting a legal conclusion and/or is so vague as to not allow for a meaningful factual finding.  Second, whether or not the listed conduct would be "reasonable" is not a matter that can be established by citing to an opinion offered by a fact witness.  Third, the cited evidence does not establish this proposed "fact" – only that Dr. Graziano is of the opinion that the hypothetical created by counsel for Agnesian would make a request "reasonable" under those circumstances.   Finally, the statement is immaterial in this action, as it does not represent an accurate and complete description of the conduct at issue here.

37. Many physicians do not understand the side effects of HIV antiviral medications because they do not deal with those medications on a daily basis.

(A)     Deposition of Franklin M. Graziano, M.D. 50:17-51:2.

**RESPONSE**: **Undisputed**, but immaterial (and to be accurate, Plaintiff notes that the medications Dr. Graziano was considering placing her on – but wanted to hold off on until her gallbladder was removed – are antiretrovirals, not antivirals).  (*See, e.g.,* Graziano Dep. at 51:3-22.)

38. Dr. Cahee returned the following recommendations to TCI on the off-site service request: "[f]ax pt medication list + name of infectious disease doctor in [M]adison and recent notes from that doctor. Fax ultrasound report to us as well – not just clinic note that refers to report."

    (A)      Deposition of Steven M. Cahee, M.D. 169:11-171:4, Exhibit 17 (Bates MJR 36).

**RESPONSE**: **Undisputed**. (For more detailed information regarding these requests and the responses to them, *see* APOF Nos. 20 & 21, as well as footnote 6 to Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.)

39. Dr. Cahee explained that the quotation in paragraph thirty eight (38) (i.e., the information that he requested on the off-site service request) meant the following: "I asked for her medication list, the name of the doctor in Madison that she saw, and the recent notes, clinic notes from that doctor. I asked for an ultrasound report, not just a clinic note that refers to the ultrasound report."

    (A)      Deposition of Steven M. Cahee, M.D. 169:11-171:4, Exhibit 17 (Bates MJR 36).

**RESPONSE**: **Undisputed.** (For more detailed information regarding these requests and the responses to them, *see* APOF Nos. 20 & 21, and as well as footnote 6 to Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.)

40. On March 20, 2008, Dr. Cahee spoke to Dr. Meress on the telephone.

    (A)      Deposition of Steven M. Cahee, M.D. 183:19-184:6.
    (B)      Deposition of Steven G. Meress, M.D. 98:2-5.

**RESPONSE**: **Undisputed**, but statement is incomplete and therefore potentially misleading. *Dr. Meress* called Dr. Cahee to inquire about his refusal to perform surgery on Ms. Rose. (Meress Dep. at 99:2-5; Meress Aff, ¶ 4 (Meress Dep., Ex. 1001); Rose Dep. at 89:2-89:13; Cahee Dep. at 183:19–184:13.) A more complete and accurate description of the conversation between Dr. Meress and Dr. Cahee, and of the events leading to that conversation, is set forth in Plaintiff's APOF Nos. 24–30.

41. Dr. Meress recorded a portion of his recollection regarding the March 20, 2008, conversation with Dr. Cahee in an Affidavit that he signed on September 30, 2008.

(A)     Deposition of Steven G. Meress, M.D. 112:18-113:21, Exhibit 1001.

**RESPONSE**:  **Undisputed**, but statement is incomplete and therefore potentially misleading.  In addition to the affidavit obtained from Dr. Meress by counsel for the Plaintiff prior to bringing this lawsuit (Meress Dep. at 112:18–115:8; 116:17–118:14), Dr. Meress recorded a clinic note describing the result of his conversation with Dr. Cahee on March 20, 2008.  (Meress Dep. at 161:4–162:15; TCI Progress Note (Meress Dep., Ex. 1002, MJR 266) ("Will call Dr. Cahee – states will only do surgery [after] HIV meds [times] 1 [month].").)

42. After the March 20, 2008 telephone conference, Dr. Cahee thought that Dr. Meress would provide him with additional records related to Ms. Rose for his review.

(A)     Deposition of Steven M. Cahee, M.D. 192:19-193:3, 194:121-195:7, 197:6-16.

**RESPONSE**:  **Disputed**.  The weight, if any, to be given Dr. Cahee's self-serving statement regarding whether he thought Dr. Meress was going to provide him with additional records related to Ms. Rose for his review will have to be determined by the fact-finder in light of the other direct and circumstantial evidence regarding Dr. Cahee's thought process and actions on and after March 7, 2008.  The evidence – including the fact that Dr. Cahee did not mention that he was waiting for "additional records" in the clinic note he dictated regarding his conversation with Dr. Meress on March 20, 2008 – supports the conclusion that Dr. Cahee did not communicate this purported belief to Dr. Meress at any time.  (*See* Meress Aff., ¶ 5; Meress Dep. at 99:13–100:2 ; Final Report (Cahee Dep., Ex. 21); Cahee Dep. at 218:11–219:8.)  In addition, this statement ignores the fact that on March 7, 2008, after Rose saw Dr. Cahee, TCI sent to the FdLRC by facsimile transmission the ultrasound report (Cahee Dep., Ex. 18) and current medications list (Cahee Dep., Ex. 19).  (Cahee Dep. at 171:14–175:7, 177:17–179:18; Meress Dep. at 94:22–95:17; *see also* APOF No. 21.)  A more complete and accurate description of the conversation between Dr. Meress and Dr. Cahee, and of the events leading to that conversation, is set forth in Plaintiff's APOF Nos. 24–30.

43. After consulting with Ms. Rose and speaking to Dr. Meress, Dr. Cahee dictated a clinic note (regarding his consultation with Ms. Rose) on April 9, 2008.

(A)     Deposition of Steven M. Cahee, M.D. 201:6-19, Exhibit 21 (Bates MJR 33-34).

**RESPONSE**: **Undisputed.** (A more complete and accurate description of the circumstances surrounding the recording of this note is set forth in Plaintiff's APOF Nos. 33–34, as well as footnote 7 to Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.

44. Rather than continuing to consult with Dr. Cahee (regarding Ms. Rose), Dr. Meress contacted Dr. Graziano, who indicated that Ms. Rose's surgery could be scheduled at UW Hospital.

(A)     Deposition of Steven G. Meress, M.D. 104:22-105:9.

**RESPONSE**: **Undisputed**, but statement is incomplete and therefore potentially misleading. Dr. Graziano only suggested scheduling Ms. Rose's surgery at UW Hospital after he learned that the surgeon at FdLRC was refusing to perform the surgery and would only consider doing so after Ms. Rose had been on HIV medications for "at least a month." (*See* Meress Dep. at 104:12–105:25.)

45. On February 27, 2008, when he recommended a surgical consultation, Dr. Graziano expected that the consultation would occur at UW Hospital.

(A)     Deposition of Franklin M. Graziano, M.D. 58:1-5, 61:17-19.

**RESPONSE**: **Undisputed**, but immaterial.

46. Dr. Graziano preferred scheduling surgery for HIV positive patients at UW Hospital.

(A)     Deposition of Franklin M. Graziano, M.D. 58:1-12.

**RESPONSE**: **Disputed**, to the extent this statement implies that Dr. Graziano preferred to have Ms. Rose scheduled for surgery at UW Hospital because of her HIV. Dr. Graziano in fact disclaims the idea that his preference to have patients referred within his own hospital related to Ms.

Rose's status as an HIV patient. (*See* Graziano Dep. at 58:13-24.) However, Plaintiff asserts that this entire proposed finding of fact is not material.

47. Ms. Rose had her gallbladder removed by Jon Gould, M.D. on June 2, 2008.

(A)    Deposition of Steven G. Meress, M.D. 133:25.

**RESPONSE**: **Undisputed**.

48. Dr. Cahee never received the name of Ms. Rose's infectious disease doctor and his notes related to Ms. Rose.

(A)    Deposition of Steven M. Cahee, M.D. 200:8-15.

**RESPONSE**: **Undisputed**, but statement is incomplete and therefore potentially misleading. Dr. Cahee never asked Ms. Rose for the name of her infectious disease specialist, even though she was present at the Clinic (FdLRC) when he wrote his request for this information on the Off-Site Service Request. (*See* Cahee Dep. at 165:21–166:3, 167:10-24.) Furthermore, Dr. Meress and Dr. Cahee had a conversation on March 20, 2008, to discuss whether Dr. Cahee would perform Ms. Rose's gallbladder surgery, and Dr. Cahee did not ask Dr. Meress for the name of the infectious disease specialist or that specialist's notes related to Ms. Rose. (*See* Meress Aff., ¶ 5; Cahee Dep. at 187:5-7; Meress Dep. at 98:21–100:2; 102:11-20; 103:20–104:8.) In his "Final Report," Dr. Cahee does not mention any outstanding request for the name of Ms. Rose's infectious disease specialist or that specialist's notes. (*See* Final Report (Cahee Dep., Ex. 21); Cahee Dep. at 218:11–219.)

### DR. MERESS' PRACTICE AND OFF-SITE REFERRALS FROM TCI

49. Dr. Meress refers patients to a surgeon so that the surgeon can determine whether or not surgery is appropriate.

(A)    Deposition of Steven G. Meress, M.D. 13:13-16.

**RESPONSE: Undisputed.**

50. Doctors at TCI have the right to review and ignore recommendations made by off-site consultants.

(A)      Deposition of Steven G. Meress, M.D. 81:8-17; 109:19-110:6.

**RESPONSE: Undisputed.**

51. TCI is the only entity able to schedule off-site service requests for prisoners incarcerated at the facility.

(A)      Deposition of Steven M. Cahee, M.D. 119:7-18.
(B)      Deposition of Franklin M. Graziano, M.D. 56:16-57:5, 70:16-25.
(C)      Deposition of Steven G. Meress, M.D. 44:25-45:14.
(D)      Deposition of Melody J. Rose 64:6-7.

**RESPONSE: Undisputed**, though vague as to the term "off-site service requests."

Plaintiff does not dispute this proposed finding of fact to the extent that "off-site service requests" means off-site services requests for medical care.

52. On some occasions, TCI refused to schedule surgeries recommended by off-site consultants.

(A)      Deposition of Franklin M. Graziano, M.D. 70:12-71:3.

**RESPONSE: Undisputed.**

### DR. CAHEE'S PRACTICE

53. Doctors employed by the S.C. treat patients according to their individual medical judgments.

(A)      Deposition of Dennis C. Yunk 107:17-18, 140:11-20, 146:11-147:4.

**RESPONSE: Disputed**, to the extent it implies that doctors employed by the S.C. are not subject to policies and procedures established by the S.C. and/or are not expected to follow policies and procedures established by Agnesian, with respect to the manner in which they "treat" people who may (or may not) be their patients. (Treml. Dep. at 81:15–82:2, 143:15-24; Cahee Dep. at 114:7–115:16, 235:20–238:20.)

54. Dr. Cahee provides treatment options to his patients based on his individual assessment of their conditions.

(A)      Response of Steven M. Cahee, M.D. to Plaintiff's First Set of Requests for Admission No. 11.

(B)    Deposition of Steven M. Cahee, M.D. 21:2-22:9, 48:14-24, 81:22-82:7.

**RESPONSE: Disputed**, to the extent this statement implies that Dr. Cahee always

provides treatment options to his patients or that he always conducts a thorough individualized

assessment of their conditions.  (*See* Rose Dep. at 67:21-24, 68:2-9, 71:1-2, 71:12-18; Rose Decl. ¶ 2

(Docket No. 56); Cahee Dep. at 109:8–110:25, 134:21-22, 166:2-3, 171:14–175:7, 177:17–179:18,

199:19-25; Final Report (Cahee Dep., Ex. 21); Meress Dep. at 94:22–95:17.) (For more detailed

information regarding Dr. Cahee's inadequate individualized assessment and lack of follow-up with

respect to Rose, s*ee* APOF Nos. 15–22, 26-30, 33-34, as well as footnotes 5-7 to Plaintiff's Brief in

Opposition to Defendant Agnesian Healthcare, Inc.'s Motion for Summary Judgment.)

55. Dr. Cahee does not provide treatment options at the conclusion of each and every initial
    consultation; if Dr. Cahee is unable to provide treatment options after the consultation, then
    he will take various steps to secure additional information about the patient.

(A)    Deposition of Steven M. Cahee, M.D. 94:21-95:21.

**RESPONSE: Disputed**.  Though this may be Dr. Cahee's normal procedure, he did not

take "various" steps to secure additional information about Ms. Rose; rather, he took one step,

which was to send her back to the prison with a note asking for more information.  (*See* Cahee Dep.

at 109:8–110:25, 166:2-3, 171:14–175:7, 177:17–179:18, 199:19-25; Off-Site Service Request (Cahee

Dep., Ex. 17); Final Report (Cahee Dep., Ex. 21); Meress Dep. at 94:22–95:17.) (For more detailed

information regarding Dr. Cahee's lack of follow-up with respect to Rose, s*ee* APOF Nos. 20–22, as

well as footnotes 6-7 to Plaintiff's Brief in Opposition to Defendant Agnesian Healthcare, Inc.'s

Motion for Summary Judgment.)

56. A patient's HIV status does not impact the surgical technique that Dr. Cahee uses or the
    procedures that he follows.

(A)    Deposition of Steven M. Cahee, M.D. 59:8-11, 163:12-165:7.

**RESPONSE:  Undisputed**

57. Dr. Cahee has performed surgery on several HIV positive patients, including at least one gallbladder surgery.

(A)     Deposition of Steven M. Cahee, M.D. 162:17-163:11.

**RESPONSE**: **Disputed**.  Through both interrogatories and requests for production, Plaintiff has requested information that would allow her to test the veracity of the cited statement of Dr. Cahee and to compare the circumstances of the four or five surgeries Dr. Cahee purportedly performed on individuals living with HIV to the circumstances presented by Ms. Rose's case (*e.g.*, whether any of the other patients had a high viral load – which is seemingly what gave rise to Defendant Cahee's undue concerns regarding transmission of the virus).  (*See* Answer to Pl. Melody J. Rose's Second Set of Interrogs. Directed to Def. Steven M. Cahee, M.D., Pursuant to Rule 33, Nos. 5 & 6; Response to Pl. Melody J. Rose's Third Set of Requests to Def. Dr. Steven M. Cahee for Prod. of Docs. Pursuant to Rule 34, Nos. 47 & 48; Def. Agnesian Healthcare, Inc.'s Resp. to Pl.'s Third Request for Prod. of Docs. Pursuant to Rule 34, Nos. 60 & 61).  Because Defendants are unable to support this statement with any more reliable evidence, Plaintiff has reason to dispute its accuracy.  Plaintiff further notes that discovery has not yet closed in this case and she is considering further steps through which she could test the veracity of Dr. Cahee's statement and/or explore the circumstances of these purported surgeries on other individuals living with HIV.  Accordingly, Plaintiff respectfully submits that the Court should not accept this statement as a finding of fact nor, in ruling on Defendant's motion, give any weight to the possibility that Dr. Cahee may have performed surgeries on some individuals living with HIV at some unspecified point in the past.

58. The patient has the final decision regarding what type of medical treatment that she receives.

(A)     Deposition of Steven M. Cahee, M.D. 97:2-10, 98:17, 100:25-101:3.
(B)     Deposition of Franklin M. Graziano, M.D. 12:22-13:14.
(C)     Deposition of Steven G. Meress, M.D. 13:17-14:3.
(D)     Deposition of Dennis C. Yunk 148:8-11.

**RESPONSE:  Undisputed**, but statement is incomplete and therefore potentially misleading, because it does not acknowledge that the patient may only choose from the options for medical treatment offered to her.  (*See* Cahee Dep. at 97:2-10; 100:14–101:5.)


February 8, 2010                                        s/ Scott A. Schoettes


Kathryn S. Devine, Ill. Bar No. 6286033          Scott A. Schoettes, Ill. Bar No. 6282105
Nina M. Knierim, Ill Bar. No. 6298480           Bebe J. Anderson, NY Bar No. 1795327
Attorneys for Plaintiff Melody J. Rose           Attorneys for Plaintiff Melody J. Rose
Schiff Hardin LLP                                Lambda Legal Defense & Education Fund, Inc.
233 South Wacker Drive                           11 East Adams, Suite 1008
Suite 6600                                       Chicago, IL 60603-6303
Chicago, IL 60606                                (312) 663-4413 (tel.); (312) 663-4307 (fax)
(312) 258-5500 (tel.); (312) 258-5600 (fax)      Email: sschoettes@lambdalegal.org
Email: kdevine@schiffhardin.com                  Email: banderson@lambdalegal.org
Email: nknierim@schiffhardin.com

Rebekah Kopec-Farrell, Bar No. 1052895
Attorney for Plaintiff Melody J. Rose
AIDS Resource Center of Wisconsin
820 N. Plankinton Ave.
Milwaukee, WI 53203
(414) 225-1578 (tel.); (414) 225-1632 (fax)
Email: rebekah.kopec-farrell@arcw.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2010, I caused the foregoing Plaintiff's Responses to Defendant Agnesian Healthcare, Inc's Proposed Findings of Fact, to be served upon the following persons by hand delivery:

Laurie J. McLeRoy, State Bar No. 1018964
Neal Krokosky, State Bar No. 1061620
Attorneys for Agnesian Healthcare, Inc.
OTJEN, VAN ERT & WEIR, S.C.
700 N. Water Street, Suite 800
Milwaukee, WI 53202
Email: lmcleroy@otjen.com
Email: nkrokosky@otjen.com

I hereby certify that on February 8, 2010, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

William R. Wick
Terri L. Weber
Attorneys for Defendants Steven M. Cahee, M.D., and Fond du Lac Regional Clinic, S.C.

Laurie J. McLeRoy
Neal S. Krokosky
Attorneys for Agnesian Healthcare, Inc.

Scott A. Schoettes
Bebe J. Anderson
Attorneys for Plaintiff Melody J. Rose

Kathryn S. Devine
Nina M. Knierim
Attorneys for Plaintiff Melody J. Rose

Rebekah A. Kopec-Farrell
Attorney for Plaintiff Melody J. Rose

s/ Scott A. Schoettes
Scott A. Schoettes
Illinois Bar No. 6282105
Attorney for Plaintiff
LAMBDA LEGAL DEFENSE & EDUCATION FUND, INC.
11 E. Adams St., Suite 1008
Chicago, IL 60603-6303
(312) 663-4413 (tel.)
(312) 663-4307 (fax)
sschoettes@lambdalegal.org